PATTY BAKER CAMPBELL, APPELLANT, V. WILLIAM T. CAMPBELL, APPELLEE.

55 N. W. 2d 347

Filed October 31, 1952. No. 33209.

*R. E. Lunner* and *J. L. Richards,* for appellant.

*Kirkpatrick & Dougherty,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

On June 16, 1951, plaintiff was awarded an absolute divorce from defendant upon the ground that he "has been guilty of extreme cruelty toward the plaintiff as alleged in the plaintiff's petition." Insofar as important here, such decree awarded plaintiff the exclusive care, custody, control, and education of William Thomas Campbell, their only child, who was then but two years and four months old. Defendant was given the right, however, to have such child on alternate Sundays and for two weeks during summer vacation unless sickness or

other unavoidable circumstances prevented. In accord with a property settlement entered into by the parties after plaintiff's petition had been filed, the decree gave defendant the fee simple title to their home in York together with all the household furnishings and furniture then therein. All other property was decreed to be the separate property of the parties. However, plaintiff was awarded $500 alimony, court costs, and $100 attorney fees. In addition, defendant was ordered to pay $50 a month beginning July 1, 1951, to the clerk of the district court as child support until the child reached his majority, became self-supporting, or was deceased. The decree of divorce contained no provision whatever requiring plaintiff to keep such child within the jurisdiction of the court.

On February 13, 1952, plaintiff filed an application requesting permission of the court to remove the child to another state and modify the decree regarding visitation by and the time when defendant should have the child. The basis for the application was economic necessity brought about by changed conditions, to wit: The removal of plaintiff's parents with whom she and the child had been required to live from York, Nebraska, to Fort Morgan, Colorado, and plaintiff's subsequent employment elsewhere.

On the same day defendant filed an application to modify the decree by giving him absolute custody of the child. The basis of his application was that plaintiff had ever since the decree ignored the welfare, care, and control of the child and delegated same to her parents. The application otherwise contained no allegation that plaintiff was not a fit, proper, and suitable person to have the child's custody.

On February 25, 1952, when the child was three years and five days old, a hearing was had on the aforesaid applications, whereat evidence was adduced, and the trial court entered a decree not only denying plaintiff's application but also awarding custody of the child to de-

fendant's parents and enjoining its removal from the jurisdiction of the court. However, plaintiff was permitted to visit the child at reasonable times and places and have the child with her on week ends. The decree also set aside the previous order for child support.

Plaintiff's motion for new trial was overruled, and she appealed, assigning that the judgment was contrary to law and contrary to the evidence. We sustain the assignments.

In comparable cases this court has heretofore established basic, applicable, and controlling rules. As late as Lichtenberg v. Lichtenberg, 154 Neb. 278, 47 N. W. 2d 575, this court held: "In a divorce suit in which the custody of a minor child is involved, the rule is that the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of fit, proper, and suitable parents.

"The care, custody, and control of a child of tender years is almost uniformly awarded to the mother if she is a fit and suitable person to have its custody."

In Hodges v. Hodges, 154 Neb. 178, 47 N. W. 2d 361, this court also held: "In awarding the custody of minor children, the court looks to the best interests of such children, and those of tender age are usually awarded to the mother. Other considerations being equal, it is usual to award the custody of children to the innocent spouse."

Such case cited with approval Bath v. Bath, 150 Neb. 591, 35 N. W. 2d 509, wherein it was held: "Custody of minor children awarded their mother in a divorce action will not be disturbed in a subsequent proceeding to modify the original decree, unless it is shown that the mother is an unfit person to have their custody, or that their best interests require such action." In that case the mother was originally given custody of two minor male children of tender years. Therein this court refused in a subsequent proceeding to disturb their custody, and she was thus permitted to remove the children from Ne-

braska to California under circumstances comparable with those at bar.

In Syas v. Syas, 150 Neb. 533, 34 N. W. 2d 884, this court held: "Ordinarily the interests and welfare of a child of tender years will be best served by placing the child in the custody of the natural mother provided she is a fit and proper person. * * *

"In a divorce case it is generally the best policy to keep minor children within the jurisdiction of the court. However, the welfare of the child should receive the paramount consideration in the determination thereof and this policy should yield to the best interests of the child." In that case, under circumstances comparable with those at bar, plaintiff was not only given custody of the child but was also permitted to remove it from Nebraska to Wyoming in order for the mother to continue in suitable employment.

It is generally held that a parent who has been awarded the custody of a child in a divorce action may temporarily provide a suitable home for it in the home of its grandparents without losing the right to its custody. 27 C. J. S., Divorce, § 317, p. 1191; McKissick v. McKissick, 93 Or. 648, 184 P. 272; Rice v. Rice, 36 Ariz. 190, 283 P. 922; Kirkpatrick v. Kirkpatrick, 52 Idaho 27, 10 P. 2d 1057; Ohler v. Ohler, 31 Ohio O. 152; Application of Shreckengaust, (Mo. App.), 219 S. W. 2d 244.

The material evidence is without dispute. Plaintiff and defendant, both residents of York, were married there August 1, 1946. On February 20, 1949, their son was born. On May 7, 1951, plaintiff filed a petition for divorce on the ground of extreme cruelty, alleging substantially that during the marriage defendant, a man of violent temper and frequently overcome by fits of anger, had repeatedly sworn at, assaulted, beaten, and bruised her, putting her in constant fear of her own safety and the safety of their child; that on May 5, 1951, defendant, without cause or provocation, severely beat, bruised, and injured plaintiff, striking her upon her

face and body; and after doing so put her out of their home, locked the doors, peremptorily left plaintiff at the home of her parents without her child and without any of her clothing except what she was wearing, and threatened great bodily violence if she should try to see the son or obtain his custody. The fact is that defendant kept the child until the decree of divorce required him to return it to plaintiff. Defendant defaulted upon plaintiff's petition for divorce and has never denied the allegations thereof. The effect of the decree of divorce was to find that the allegations thereof were true. In that connection the present proceeding is simply a continuation of the original divorce action and one of its incidents deemed a part thereof. See, Lippincott v. Lippincott, 152 Neb. 374, 41 N. W. 2d 232; Pasko v. Trela, 153 Neb. 759, 46 N. W. 2d 139, and cases cited therein.

Pending the divorce proceedings, plaintiff, a young woman who had no special training and was without employment or means of support, lived with her parents. After the decree was entered, defendant was required thereby to return the child to plaintiff. He told her upon doing so: " 'If you ever lay a hand on that boy I will kill you.' " During the present hearing he was asked: "Q. Did you ever make a threat to Patty (that is, the plaintiff) that if she wasn't good to Billy you would kill her? A. I did, Bob. If she ever laid a hand on him I would kill her."

For about a month after the decree plaintiff and their son continued to live with her parents. At the end of that period, with permission of defendant, plaintiff took the child and went to a sister's home in Sterling, Colorado, for some five weeks. Her sister's husband was the high school principal there. A few days after their return plaintiff went to Sun Valley, Idaho, to assist and care for another sister who was expecting a child. The boy here involved was left with plaintiff's parents, entirely proper and suitable persons, who gave him ex-

cellent care in a good home. The sister's baby was born on September 28, 1951, after which plaintiff was able to obtain temporary employment there, and thereafter to obtain desirable permanent employment in a drug store at Sun Valley, a year-round recreation center operated by the Union Pacific Railroad. Plaintiff planned to come home about the middle of October and get her child, but she did not do so because her mother advised her to stay there and because she was afraid of defendant. In such situation plaintiff did not return to York until a few days before the hearing upon her application at bar. In the meantime the child was well cared for by plaintiff's parents. However, defendant complied with the child-support order and was permitted to have the child with him on numerous occasions as provided in the decree, at which time the boy was entertained by the father in a rather lavish manner.

There is no competent evidence whatever that plaintiff was not a fit and proper person to have the custody of the child, or that she had in any manner either before the divorce or subsequently failed to properly care for or see that the child was properly cared for. There is competent evidence from which it could be concluded that defendant himself was not such a fit and proper person, although concededly he was financially able to make adequate provision for the child's care and education. The trial court evidently so concluded. It is true that the parents of both plaintiff and defendant did and could give the child a good home. There is also ample competent evidence that plaintiff, the innocent spouse and a fit and proper parent with superior rights, could and would do so, with her present income and payment of child support by defendant. When the divorce was granted, defendant took the home and furniture so that plaintiff, having no employment in York, had nowhere to live except with her parents who, because of the father's ill health, were on March 1, 1952, removing from York, Nebraska, to Fort Morgan, Colorado. In that

situation, plaintiff did the best she could and obtained suitable employment at Sun Valley, Idaho. Her married sister, unemployed outside her home, lives at Ketchum, the residence section of Sun Valley a mile distant, in a good home with ample space and modern facilities. She had a child five months old at the time of this hearing, and her husband was well employed there. They offer to permit plaintiff and her child to live in their home, and the sister, a fit and proper person, offers to care for the child during plaintiff's working hours. Both plaintiff and her parents freely pledged themselves to abide by any reasonable order made by the court with regard to the child's custody or whereabouts. They even offered to provide a bond guaranteeing performance of the decree, but we see no reason for requiring it or deciding whether or not such could be done.

We find no reason whatever for depriving plaintiff of the child's custody or preventing his removal from the jurisdiction of the court to Idaho where apparently his best interests will be served. We therefore conclude that the injunction heretofore entered should be dissolved and the decree of divorce should be modified by the court, permitting plaintiff to so remove the child, but giving defendant the right to visit the child at reasonable times and places where the mother lives and have the child's custody for a continuous period of one month during summer vacation of each year, that is, during either June, July, or August, the time to be selected by plaintiff. If during such period the child is returned to York or taken elsewhere, same shall be at the expense of defendant. Further, the child-support payments of $50 a month, as originally entered against defendant, should be reinstated except for the months respectively from March 1952 to October 1952, inclusive, the period during which the child was in the custody of defendant's parents. All costs in the district court and this court, including a reasonable allowance as attorney fees for

plaintiff's attorney in the district court, and $250 as attorney fees for plaintiff's attorney in this court, shall be and are taxed to defendant.

For the reasons heretofore stated, the judgment of the district court should be and hereby is reversed and remanded, with directions to enter a judgment for plaintiff in conformity with and as directed in this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.