No. 20,379.

WALTER H. TANTTILA *v.* INEZ I. TANTTILA.
(382 P. [2d] 798)

Decided June 10, 1963.    Rehearing denied June 25, 1963.

Mr. GERALD A. CAPLAN, for plaintiff in error.

Messrs. WILLIAMS & ZOOK, Mr. JOEL H. GREENSTEIN, Mr. WILLIAM A. TRINE, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error will be referred to as the father, and defendant in error as the mother. The parties were formerly husband and wife and were the parents of three children who were of the ages of seven, five and four respectively at the time of the entry of the judgment to which this writ of error is directed.

The mother commenced an action for divorce in the district court of Boulder County and on December 20, 1961, a decree of divorce entered therein. A stipulation was entered into by the parties and made a part of the divorce decree, which provided:

"1. The primary custody of the children of the parties: Patricia, age 6; Harvey, age 4; and Margaret, age 3, shall be granted to the plaintiff. It is understood and agreed that the defendant shall have the right of reasonable visitation to consist of the following:

"a. Defendant shall have the right to have custody of the children on alternate weekends from Friday evening until Sunday evening.

"b. The defendant shall have special rights of visitation during the time when he is on vacation from his employment with the University of Colorado.

"c. The defendant shall have the right to the custody of the children for a period of not to exceed thirty days during his summer vacation from the University of Colorado.

"2. The plaintiff agrees that she will not remove the children from the jurisdiction of Colorado without permission of the Court or the defendant."

January 25, 1962, the mother filed a motion seeking the court's permission to remove the three minor children from Boulder, Colorado, to Sebeka, Minnesota. On March 13, 1962, the court heard argument of counsel on the above motion and on March 20, 1962, an order was signed by the court, nunc pro tunc, to the 13th day of March, 1962, permitting the mother to remove the children to Sebeka, Minnesota, and, in addition, determining certain other rights as to custody and support payments. On March 30, 1962, the father filed motions to "Amend Findings and Order" under Rule 52, Colorado Rules of Civil Procedure, and for a "New Trial" under Rule 59, Colorado Rules of Civil Procedure. On May 18, 1962, the district court denied said motions.

The father is here on writ of error seeking review of the judgment authorizing removal of the children to the State of Minnesota. As grounds for reversal it is urged by counsel for the father that: "It is against the policy of the law of Colorado to permit removal of a child from the jurisdiction unless the party seeking the verdict of removal proves that the best interests of the child would be served by said removal.

"A removal of a child from the jurisdiction rests in the sound discretion of the trial court but there must be some evidence supporting a conclusion that the children's welfare and best interests will be promoted by their removal.

"The record lacks sufficient evidence to establish that the best interests of the minor children would be served by their removal from the state of Colorado. The record

shows that Mrs. Tanttila's reasons for removal were for her personal conveniences only. Therefore, the granting of the motion by the trial court was an abuse of its discretion and should be reversed."

The trial court made findings which include the following:

"That the welfare of the children would be best served by allowing the mother to move to the State of Minnesota where she will be better able to rear the children, carry out her custodial responsibilities under less economic stress and mental tension, and where she will be able to spend more time with the children and give them closer personal supervision."

The question for our determination is, whether there is sufficient competent evidence in the record before us to justify this conclusion.

It is well established in Colorado that it is against the policy of the law to permit the removal of a child from the jurisdiction unless its best interests would be better served thereby. In *McGonigle v. McGonigle,* 112 Colo. 569, 151 P. (2d) 977 (1944), we find the following pertinent language:

"Where the custody of a child is awarded in a divorce proceeding, the child becomes the ward of the court, and it is against the policy of the law to permit its removal to another jurisdiction unless its well-being and future welfare would be better subserved thereby."

However, should it be established that removal of the child from the jurisdiction would be conducive to the child's best interests, then the court should permit removal from the jurisdiction.

"While ordinarily the custody of a child should not be awarded to a non-resident, nor to one contemplating immediate removal from the state, it, nevertheless, is well established that when it is conducive to the child's best interests, the court may permit it to be removed from the jurisdiction." *McGonigle,* supra, p. 572.

In *Searle v. Searle*, 115 Colo. 266, 172 P. (2d) 837, the following is said:

In determining what is for the best welfare of a child of tender years, the courts must consider not only food, clothing, shelter, care, education and environment, but must also bear in mind that every such child is entitled to the love, nurture, advice and training of both father and mother and to deny to the child an opportunity to know, associate with, love and be loved by either parent may be a more serious ill than to refuse it in some part those things which money can buy."

In the instant case the record shows that the father had been contributing the sum of $280.00 per month for the support of the mother and children; that other assets in the form of real estate are to be disposed of and the proceeds derived from the sale thereof are to be divided equally between the father and the mother. The mother testified concerning the relationship between the father and the children as follows:

"They love him very much. He loves them. * * * I have told you that they loved their father and they have been very happy to be with him here."

For all practical purposes the order authorizing removal of the children to the State of Minnesota eliminates any opportunity for visitation rights by the father except during summer vacations. There is no showing in the record before us of any substantial reasons of health, cultural opportunities or other advantages contributing to the best interests of the children, justifying their removal from the State of Colorado. In fact, the contrary overwhelmingly appears. The father has indicated a willingness to do more than at present required in the way of providing "baby-sitter" support in order to have his children available for visitation rights as originally contemplated.

The father has adequate means with which to supply all the reasonable requirements of his children, and their support and maintenance is a prior claim upon his earn-

ing capacity. There is no need for the mother to live "more cheaply" in a town far removed from this jurisdiction. Even if there was such a need, there was a lack of competent evidence to establish cheaper living costs in Minnesota. If the best interests of the children require that the mother spend more time with them and less time at work, the resources of the father are adequate and the trial court upon application could so adjudge if the showing made justified such an order. We reach the inescapable conclusion, as counsel for the father has suggested, that the fundamental reasons prompting the mother in seeking removal were for her own personal conveniences only.

The judgment is reversed and the cause remanded with directions to vacate the order authorizing the removal of the minor children of the parties to the State of Minnesota.

MR. JUSTICE HALL and MR. JUSTICE McWILLIAMS dissent.

MR. JUSTICE McWILLIAMS dissenting:

The trial court after full hearing granted Inez's motion requesting permission to remove the three children of the parties from the State of Colorado to the State of Minnesota, with the proviso that Walter should have the right to custody of the three in Colorado during the summer vacation.

In granting the aforementioned motion, the trial court found, inter alia:

"That the plaintiff [Inez] has been, and is at the date of this hearing, a fit and proper person to have custody of the three children of the parties; that the plaintiff seeks to remove the three children to the town of Sebeka, in the State of Minnesota for good and beneficial reasons affecting the welfare and best interests of the said children; that the plaintiff will be able to spend more time with her children in Minnesota, and the chil-

dren will not have to be cared for by baby sitters to the extent it is now necessary for them to be so cared for in Boulder, as a result of the Mother's having to be employed; that the Mother is a registered nurse and may not have to work at all in Minnesota due to the difference in the cost of living between Sebeka, Minnesota, and Boulder, Colorado, but that, if it is necessary for her to work, she will be able to find more remunerative employment and at more desirable hours in Minnesota than in Boulder, Colorado, thus permitting her to spend more time with her children; that the Mother has family and friends in Minnesota, whereas she has no family in Boulder; * * * that the values attributable to the defendant's (Walter's) visitation in this case are not of a kind that are more particularly important or vital to the children than is usual in such cases; . . . that the father remarried immediately after the decree of divorce entered in this action and his present wife has two children; . . . that the proximity to each other of the parties has resulted in bickering and dissension between them; that the bickering and tension is aggravated by the extreme frequency of the visitation privileges of the defendant, and that the aforementioned bickering, tension and frequency of visitation has had an adverse and disturbing effect upon the children of the parties; that the welfare of the children would be best served by allowing the Mother to move to the State of Minnesota where she will be better able to rear the children, carry out her custodial responsibilities under less economic stress and mental tension and where she will be able to spend more time with the children and give them closer supervision . . . "

The issue to be resolved is whether there was evidence before the trial court which would warrant and support its commendably detailed and explicit findings. The majority holds that "there is no showing . . . of any substantial reasons of health, cultural opportunities or other advantages contributing to the best interests of

the children, justifying their removal from the State of Colorado," and that "in fact, the exact contrary overwhelmingly appears." I do not so view the record, and with such appraisal of the evidence I am in respectful but quite definite disagreement.

The only witnesses at the hearing were the parties themselves, each of whom was allowed to testify virtually without objection as to their respective wishes and desires in connection with the contemplated move of the children to Minnesota, and their reasons in connection therewith.

From the record I learn that Inez and Walter were reared and educated in Minnesota, Inez being a registered nurse and Walter having received his bachelor's degree in chemical engineering, a master's degree in physics, as well as a doctorate degree. The Tanttila family only moved to Boulder in about 1958 when Walter accepted a teaching position at the university. Three and one-half years later their marriage was terminated by a judicial finding that a divorce should be granted to both parties on the statutory grounds that both were guilty of "extreme and repeated acts of cruelty, constituting mental cruelty." Pursuant to stipulation the decree in divorce provided that custody of the three children be placed with Inez, with Walter having the right to custody of all children on alternate weekends, "from Friday evening until Sunday evening." Walter also was similarly ordered to pay $180 per month as support money for the three children, and $100 per month as alimony.

Only a few days after the entry of the divorce decree Walter married a woman who had two children by a prior marriage, and they proceeded to set up their own home.

Being unable to run her household on $280 per month, Inez found it necessary to obtain part-time employment with the Boulder Medical Center, occasionally working from 8:30 in the morning until 5:30 in the evening, and

on other occasions working only the morning or afternoon shifts. The children were turned over to a baby sitter when Inez was away from the home.

Inez in effect testified that in her view the interests of her three children would be better served if she could work less and spend more time in the home, and that such could be accomplished by moving to Sebeka, Minnesota, her home town. Specifically, in response to the question as to why she wished to take the children to Minnesota, she testified: " . . . because I am aware that I can live much less expensively in that area. My parents, my family are there. I will have greater support and help. I will be among friends, and I am aware that living is cheaper. I would probably be able to maintain a proper life for the kids, work as little as possible so that I would have time to be the baby sitter for them."

Without recounting all of Inez's testimony, it seems apparent to me, at least, that the dominant reason for moving to Minnesota was Inez's desire and definite expectation to be more of a full-time mother, which most certainly is in the best interests of her children.

Additionally, the record establishes that subsequent to the divorce there was ever-increasing bickering between Inez and Walter, occurring on several occasions in the presence of the children when Walter came to take the children for the weekend into his new home. The older child was said to be already showing symptoms of "divided loyalty."

In short, I find ample evidence to support the action of the trial court. What is in the "best interest" of a minor child is not always capable of being proved with mathematical certainty. Many factors must be considered and weighed by the trial judge, whose responsibility in this type of proceeding is generally difficult and quite frequently most delicate in nature. In the instant case, an experienced and capable judge not only heard the parties, but of equal importance had the oppor-

tunity to observe their demeanor on the witness stand. All we can do here is read a cold record, whereas the trial court not only heard the parties, but figuratively speaking looked into their very hearts. Under these circumstances I am disinclined to second guess the trial judge on which course of action is for the best interest of the Tanttila children, and even if I disagreed with his decision (which I do not), I would not substitute my judgment for his.

Nor am I impressed, as the majority appears to be with Walter's "willingness to do more than at present required, in the way or providing 'baby sitters' support in order to have his children available for visitation rights as originally contemplated." As I understand it, Walter suggests that his present wife should and would quit her outside employment, thereby making it possible for *her* to "baby sit" with Inez's three children while Inez herself was working. No doubt Walter is sincere in this offer and perhaps such arrangement would be preferable to having the children cared for by a stranger, but the much better course of action, so clearly discerned by the trial court, is to have the three very young children cared for by their own mother.

I would affirm the judgment.

I am authorized to say that MR. JUSTICE HALL joins in this dissent.