**Diane MORAN, Plaintiff and Respondent,**

**v.**

**Kenneth M. MORAN, Defendant
and Appellant.**

**Civ. No. 8804.**

Supreme Court of North Dakota.

June 9, 1972.

As Modified Sept. 6, 1972.

Warren King, Minneapolis, Minn., and Kenneth M. Moran, Jamestown, for appellant.

Robert Vogel, Mandan, for respondent.

ILVEDSON, District Judge.

The plaintiff brought this action for divorce against her husband in September 1970 on the ground of extreme cruelty. The defendant denied the allegations of the complaint and asked that such action be dismissed. The Honorable Adam Gefreh, district judge, presided at the trial of the action in April 1971.

The plaintiff and the defendant were married in February 1955. Three children were born as the issue of this marriage. Their names and birth dates are: Kenneth, Jr., June 29, 1960; Timothy, July 10, 1961; and Danielle, October 15, 1962. At the time of the trial they were ten, nine, and eight years of age, respectively.

The court granted a divorce to the plaintiff, but determined that each parent was a fit and proper person to have the care, custody, and control of the children. The court provided for the custody of the children as follows:

"The plaintiff shall have the custody of the children during the school year, and the defendant shall have custody of the

children during the summer vacation period, for one week during the fall migratory water fowl hunting season, and from the time school lets out for Easter vacation until school resumes after Easter Sunday. The custody at Christmas vacations shall be divided as follows: In alternate years, commencing with the Christmas vacation of 1971, the defendant shall have custody of the children during the Christmas vacation period, while in the other alternate years the plaintiff shall have custody of the children during the week in which Christmas Eve and Christmas Day fall, and the defendant shall have their custody during the remainder of the Christmas vacation.

"IT IS FURTHER ORDERED, ADJUDGED and DECREED, that each party shall allow the other reasonable visitation rights, and the party making the visitation shall give 24 hours notice of his or her intention to exercise such right, except in case of emergency. The summer vacation period, as that term is used herein, means the months of June, July and August."

After the trial court had made its determination of custody, the parties entered into a stipulation covering property rights, alimony, and support of the children. The court adopted this stipulation and it was made a part of the judgment.

■ The defendant as appellant filed a demand for a trial de novo, which is set forth in his notice of appeal and is a part of the statement of the case. In addition, he filed several specifications of error. In his brief on appeal the defendant states that the specifications of error were filed only in the event the Supreme Court would not grant a trial de novo. The concern of the defendant in this regard stems from the repeal of the Newman Act by the 1971 North Dakota Legislature. The Newman Act provided for trial de novo in actions tried to the court without a jury. This repeal took effect July 1, 1971. We recently held, in Automobile Club Insurance Co. v. Hoffert, 195 N.W.2d 542, (N.D.1972), that where the appellant demanded a trial de novo and served and filed his notice of appeal and undertaking prior to July 1, 1971, such demand for trial de novo was timely made. In the case before us the notice of appeal and demand for trial de novo were served and filed prior to the effective date of repeal of the Newman Act.

■ On trial de novo this court is obliged to try anew questions of fact in the entire case. Rohde v. Rohde, 154 N.W.2d 385 (N.D.1967). We have examined the evidence and find that the plaintiff was entitled to a divorce on the ground of extreme cruelty. We further determine that there was an equitable distribution of property and that the alimony and support payments provided for in the judgment are fair and adequate.

The only real issue argued on this appeal by the defendant is his claim that he should have been granted custody of his two sons. He acknowledges that it would be for the best interest of the daughter to remain with her mother. The defendant contends that the evidence is insufficient to support the judgment of the trial court in regard to the custody of the children and that the court abused its discretion in this matter. We will now review the evidence presented at the trial of this case.

It should be pointed out that before the trial commenced, counsel agreed that the plaintiff would limit her testimony pertaining to grounds for divorce. As the trial progressed, however, both sides presented testimony derogatory to the other to show that one or the other was more fit to have custody of the children.

Two women who faithfully performed household duties or baby-sitting services at the Moran home for many years testified on behalf of the plaintiff. Their testimony is highly complimentary to the plaintiff as to her deep concern for the welfare of the children. After the parties to this action had separated the defendant had spoken to

each of these women about the possibility of one of them working for the defendant as a full-time housekeeper if the court should grant him custody, but both declined.

An important witness for the plaintiff was Mrs. Breidenbach. Mr. and Mrs. Breidenbach formerly lived in North Dakota but they moved to California several years ago where he is engaged in the practice of law. The Morans and the Breidenbachs were very close friends. The Morans made several visits to the Breidenbachs in California, as guests in their home, and the Breidenbachs made return visits to North Dakota. After the separation of the Morans, the defendant visited the Breidenbachs in September 1970, staying at their home for a week. In addition to visits, the Morans and the Breidenbachs telephoned each other often. The defendant continued these conversations by telephone long after the separation. Mrs. Breidenbach had nothing but praise for the plaintiff as a mother to the children. Her testimony was critical of the defendant, of his drinking to excess and of his conduct toward the plaintiff when drinking. She expressed the opinion, however, that both of the Morans had genuine love for the children.. It is evident that the defendant was disappointed that Mrs. Breidenbach testified on behalf of his wife. In January 1970 he told Mrs. Breidenbach he did not think the marriage would last and added, "But one thing I've got to say is that she is an excellent mother."

The only witnesses presented by Mr. Moran in regard to the suitability of either as fit parents for the custody of the children were his parents and an uncle.

His mother told of the defendant's interest in his children and stated that he had spent much time with them. She acknowledged that defendant did have a drinking problem prior to the commencement of the divorce action. She stated that the plaintiff had been a good mother to the children. The defendant's father testified to the very fine relationship between his son and the children. These grandparents offered to care for the children full time until a suitable housekeeper could be found, in the event the trial court granted custody to the defendant. The mother of the defendant stated that they spend their summers at their home at a Minnesota lake. She usually goes to New England in the fall and to Florida in the winter. At the time of the trial she was contemplating a trip to Australia in the late summer of 1971. She stated that she was willing to relinquish these vacation plans and trips to care for the children.

Mr. McElroy, uncle of the defendant, told of the devotion of the defendant to the children. He acknowledged that the plaintiff had done a "modestly" good job of running the house and caring for the children.

The plaintiff testified as to her future plans if a divorce were granted. She desired to return to college to secure a master's degree in art history and then continue on toward a doctorate so that she would be able to earn her own living. She desired to teach art history at the college level. At the time of the trial she was considering four colleges which had the authority to grant these degrees in art history: University of Massachusetts at Amherst, Massachusetts; University of Iowa at Iowa City, Iowa; University of North Carolina at Chapel Hill, North Carolina; and the University of Virginia at Charlottesville, Virginia. She had been awarded a Danforth fellowship for women which would help her financially in seeking this additional education. She had already been accepted at the University of Massachusetts but was awaiting the results of her applications to the other three colleges before making a decision on the matter. She intended to rent an apartment or house in one of these college cities. She desired custody of all three children. She emphasized that while she was in college classes the children would be in school, too. She was agreeable to the children spending

their summer vacations with their father at Jamestown, North Dakota. The alimony provisions of the judgment give her ample funds for the next six years to secure these degrees. She told in detail of her relationship with the children and her part in their daily lives as their mother.

The plaintiff testified that there are more important things in life than materialistic values. She looked forward to the cultural opportunities in the large college towns where she would be studying, such as concerts, museums, art galleries, and plays.

The defendant testified that the marriage began to deteriorate when his wife started to teach part time at the local college in the fall of 1969. He said that on her 34th birthday, she cried and told him that life was all downhill and that it didn't have anything more to offer in the future. After she began teaching, he said, she became so immersed with her preparations for the one class she taught that she found no time for the usual family activities either evenings or on week-ends. He said that she began to copy the style and dress of college girls, played their type of music, "rapped" with them, and adopted their mannerisms and attitudes. He complained of her swearing in the presence of the children. She does not deny using swear words at times, but states that if it ever happened in front of the children it was done inadvertently. The defendant admits he forcibly ejected the plaintiff from the house in the presence of the children in August 1970, but said he was provoked into this assault when his wife screamed an obscene word at him in the presence of his daughter. Defendant acknowledges that the particular obscene word he so strongly objected to had been originally introduced into the family by him. The defendant recognizes the fact that he had a drinking problem prior to this time, but claims he has been cured of drinking to excess. The evidence indicates that on at least one occasion, in December 1970, he was under the influence of liquor when he telephoned Mrs. Breidenbach to complain about her communicating with his wife.

The record shows the plaintiff and the defendant living an affluent life. Their home is spacious, on an acre of land adjoining the river. The house includes a large room with a 16- by 32-foot swimming pool. When the house was constructed the defendant had golf cups sunk into the concrete recreation room floor so that when it was carpeted later it could be utilized for putting greens. There was a net for driving golf balls in the same room, a basketball hoop, and a place for shooting targets and darts. In a lake not far from Jamestown the defendant had moored an old 31-foot lobster boat which he purchased in Massachusetts and which the family uses on occasions as a fishing boat. Mrs. Moran has had housekeepers two afternoons a week to iron and do housework. He drives a Jaguar.

Prior to the separation of the parties, it was a usual evening for the plaintiff to feed the children early and for the defendant to drink two or three martinis while she drank one or two herself. Dinner for the two of them would then follow quite late.

At the request of the defendant the children were questioned by the trial court. It appears that Danielle, age eight, did not make a clear preference between the two parents but there appeared an inclination to remain with the mother instead of the father. Timmy, age nine and in the fourth grade, expressed the wish to remain in Jamestown where his friends live and where there was fishing and hunting. He stated he would rather live in a "man's house" than in a "girl's house." Kenneth, age ten and in the fifth grade, expressed the wish to remain in North Dakota with his father because of hunting and his friends.

The defendant is a 40-year-old successful lawyer. His devotion to the children has been primarily demonstrated in activities involving physical activities. He is an out-

doorsman, an accomplished golfer and an avid hunter. Where the plaintiff has taught the children the beauty of nature and art appreciation, he has taught the children, mainly the boys, the sportsman side of nature. The boys have fished and hunted with their father on many occasions. They are accomplished swimmers and have come to enjoy golf.

The evidence shows that the plaintiff has been the one who was primarily responsible for tending to the physical needs and wants of the children since their birth. She saw to it that they were up in the morning, dressed, fed, clothed, and off to school. She drove them when the weather was inclement. She took them to school events and activities, such as basketball practice. She was responsible for their medical and dental appointments, the contacting of teachers as to their school progress, assisting them in their studies, and the preparation of their meals. The defendant was a late riser who usually arose in the morning at about 10 a. m. Plaintiff took all of the family snapshots and movies of the children. Her closeness to the children is shown by the fact that since infancy the children have been habitually accustomed to a "tucking in" procedure before going to sleep at night. This was a period of time when the children and their mother enjoyed nightly a little personal chat as to the events of the day as she sat at their bedsides. At the time of the trial she was 36 years of age.

■ The defendant contends that the trial court abused its discretion in permitting the plaintiff to take the children to another State while she continues her college education. Some courts do hold that it is generally the best policy to keep minor children within the jurisdiction of the court, but these same courts recognize that the welfare of the children should receive the paramount consideration and such policy should yield to the best interests of the children. Campbell v. Campbell, 156 Neb. 155, 55 N.W.2d 347 (1952); Peterson v. Peterson, 13 Wis.2d 26, 108 N.W.2d 126 (1961); Hayes v. Hayes, 134 Colo. 315, 303 P.2d 238 (1956); Tanttila v. Tanttila, 152 Colo. 445, 382 P.2d 798 (1963).

■ Section 30–10–06(2), N.D.C.C., sets forth the guidelines to be considered in custody cases:

"2. As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but other things being equal, if the child is of tender years, it should be given to the mother, and if it is of an age to require education and preparation for labor or business, then to the father."

The phrase "other things being equal" gives the court a large measure of discretion to determine how the best interests of the child will be served. Guldeman v. Heller, 151 N.W.2d 436 (N.D.1967); Gress v. Gress, 148 N.W.2d 166 (N.D.1967).

■ The question of determining in whom to place the custody of a child is one of the most difficult problems that is presented to the courts. It is because of the myriad problems involved that trial courts are vested with a great deal of discretion, and their decisions ordinarily will be reversed only where there is an abuse of that discretion. Guldeman v. Heller, *supra*; Gress v. Gress, *supra*; Azar v. Azar, 146 N.W.2d 148 (N.D.1966); Sjol v. Sjol, 76 N.D. 336, 35 N.W.2d 797 (1949).

■ This court repeatedly has held that in determining the custody of children in a divorce action, the welfare of the children is to be given paramount consideration. Ficek v. Ficek, 186 N.W.2d 437 (N.D. 1971); Noakes v. Noakes, 185 N.W.2d 486 (N.D.1971); Kucera v. Kucera, 117 N.W. 2d 810 (N.D.1962); Rufer v. Rufer, 67 N. D. 67, 269 N.W. 741 (1936).

[8] The appellant would predicate abuse of discretion on the fact that the two sons, nine and ten years of age at the time of the trial, expressed their wish to remain

with their father. We find that the prevailing and correct rule concerning the proper weight to be given to the expressed wish of a minor whose custody is at issue is set forth in 4 A.L.R.3d 1396, 1402 (1965 annotation). It is there stated that in cases of children of sufficient age, discretion, and intelligence to exercise an enlightened judgment, their wishes concerning their own custody are a factor which should be considered by the court. Section 30–10–06, N.D.C.C.; Guldeman v. Heller, *supra*. But the wish of a child in such instances is certainly not a controlling one but merely one of many factors to be considered by the court. The court may find that such expressed wish is subordinate to the child's best interests. The reason that a child's preference cannot be controlling is that his preference for one parent or the other can be so easily influenced by discipline or lack of it, or by denial or gratification of childish desires. Hahn v. Falce, 56 Misc.2d 427, 289 N.Y.S.2d 100 (1968). The evidence in the case before the court shows that the defendant gave his two sons a motorized mini-bike at a cost of $200 as a Christmas present in December 1970 after the parties had separated. During this period of time he had the children on weekends and the plaintiff had custody during the school week. The plaintiff was upset by the giving of this expensive gift to her sons without consultation or notice to her, and we believe rightfully so.

At the conclusion of the trial the judge gave his reasons for providing for the custody of the children as set forth in the decree. He believed it to be in the best interests of the children to be with their mother during the school year and with their father during the summer vacation months. He found that there was a very close relationship between the children and their mother and that the children were too young to be left without the daily guidance of a mother whom they have looked to for guidance and security since birth. He stated that this kind of love cannot be substituted by grandparents or babysitters no matter how good they might be. The evidence is clear that the plaintiff was primarily responsible for the physical needs of the children and that since birth she has given them loving and faithful care. The trial court believed it desirable at this period of the children's lives that they be together and not separated as suggested by defendant. The trial court noted that a practicing lawyer is very busy during the heavy court terms of the winter months but under the custody provisions the children would be with him during the summer vacation months when outdoor activities, such as fishing, golfing and camping are in full swing. The defendant is granted additional custody for a week during the fall hunting season and the Easter vacation. His custody rights during the Christmas holidays are liberal.

The court further indicated that in two or three years the two boys would be more mature and better able to adjust to a long absence from their mother. Undoubtedly, the court recognizes that as the boys near puberty they will more likely be dependent upon the guidance and discipline of a father rather than a mother. When a divorce is granted, the trial court has continuing jurisdiction with regard to the custody, care, education and welfare of minor children of the marriage. Section 14–05–22, N.D.C.C.; Bryant v. Bryant, 102 N.W.2d 800 (N.D.1960). In the event that a petition for change of custody is filed with the trial court at a future time, the welfare of the children will again be the paramount consideration of the trial court.

We find that the evidence justifies the court's decision with respect to the custody of the children and that it was not an abuse of discretion.

Since defendant argues that he is at least entitled to a new trial should this court refuse to reverse the trial court's decision of custody, and defendant bases this upon several specifications of error, we will consider them.

Defendant contends that the plaintiff deceived the trial court into believing she was going to pursue a Ph.D. degree in art education at the University of Massachu-

setts where she would be near many of her relatives, and that this had an effect on the decision of the court in granting her the custody of the three children during the school year. It is clear from the testimony of the plaintiff throughout the trial that she was considering four colleges in four different States, including the University of Virginia at Charlottesville, where she enrolled for the fall of 1971. Trial counsel for the defendant acknowledges this to be a fact in his question to the defendant's mother:

"Q. In the event the Court would award custody to your son and the evidence shows that he intends to remain in Jamestown and practice his profession, and the Plaintiff intends to move somewhere unknown at this time in one of four states, what plans would you have to take care of the daily needs of these children . . . "

Another specification of error pertains to a letter written by counsel for plaintiff to opposing counsel and the defendant while the trial was in progress. The letter shows on its face that a copy of it was mailed to the trial judge. This letter is not a part of the statement of the case nor does it appear in the proceedings before the trial court that the defendant made an issue of it. An issue or contention not raised or considered in the lower court cannot be raised for the first time on appeal from the judgment. Remmick v. Mills, 165 N.W.2d 61 (N.D.1969). If the trial court failed to settle the record in accordance with the facts, defendant had an appropriate remedy under Section 28–18–07, N.D.C.C., to apply to this court to settle the statement of the case. Hrabek v. Patocka, 49 N.D. 1119, 194 N.W. 691 (1923). We cannot consider evidence not contained in the statement of the case. Frandsen v. Mayer, 155 N.W.2d 294, 299 (N.D.1967). Since the contention of defendant casts reflection upon counsel for plaintiff, we have considered the contents of this letter and we find it to be neither improper nor prejudicial to the rights of the defendant.

The defendant claims that the trial court committed error in admitting in evidence Exhibit 6. This was an exhibit prepared by the librarian of Jamestown College who also was a professor of political science. The exhibit was the result of his research as a librarian of various publications to secure information on the four cities where the colleges were located which plaintiff had under consideration for the degrees in art education. However, in addition to utilizing various reports, including the Census Bureau publications which are recognized as standard works, he testified that he had made telephone calls to persons in Jamestown, North Dakota, Amherst, Massachusetts, and Chapel Hill, North Carolina, to secure additional information on crime reports of those cities. The report of the witness as to information secured by making personal telephone calls is hearsay. However, we have examined this exhibit and we do not consider its admission into evidence to be prejudicial to the substantial rights of the defendant. We therefore rule that its admission into evidence was harmless. Kohler v. Stephens, 74 N.D. 655, 24 N.W.2d 64 (1946).

Immediately before the commencement of the trial of this divorce action, the trial court held a conference in his chambers and spoke to the parties and to their counsel. Defendant contends this to be error in view of the fact that a court reporter was not present and a record was not made of the conference. Again, this is not a part of the statement of the case nor was it brought to the attention of the trial court. Remmick v. Mills, *supra*; Spitz v. Continental Casualty Co., 40 Wis.2d 439, 162 N.W.2d 1 (1968). This was a conference preliminary to the actual commencement of the trial of the action. The defendant did not request the presence of the court reporter. This constitutes a waiver and acquiescence on the part of defendant and his counsel.

In his brief to this court the defendant sets forth verbatim a letter he wrote to his wife in November 1970. He states that he did not find this letter until after trial, but that it "should in fairness be reviewed by the Court." Defendant did not ask the trial court to reopen the case to receive this letter nor did he move for a new trial upon the ground of newly discovered evidence. The letter is not a part of the set-tled statement of the case. This court on appeal cannot consider evidence not con-tained in the settled statement of the case. Frandsen v. Mayer, *supra.* It was not appropriate for the defendant to incorporate a copy of the letter in his brief to this court.

■ One specification of error was not supported by written argument in the brief and is deemed abandoned. Hansen v. Fettig, 179 N.W.2d 739 (N.D.1970).

The judgment is affirmed.

STRUTZ, C. J., and ERICKSTAD, PAULSON and TEIGEN, JJ., concur.

KNUDSON, J., deeming himself disqualified did not participate; ROY A. ILVEDSON, Judge of the Fifth Judicial District sitting in his stead.