In re the MARRIAGE OF Jane E. MURPHY, n/k/a Jane E. Andrews, Appellant,

and

John P. Murphy, Appellee.

No. 91CA0035.

Colorado Court of Appeals, Div. I.

June 4, 1992.

Frey, Lach & Michaels, P.C., John J. Haggerty, Fort Collins, for appellant.

Mike Varallo, Greeley, for appellee.

Opinion by Judge PIERCE.

Jane E. Andrews (mother) appeals from a trial court order denying her request to remove her minor son, Shawn Murphy, from Colorado and granting the cross-motion of John P. Murphy (father) for custody of Shawn. We reverse and remand.

The parties' marriage was dissolved in 1985. The decree of dissolution gave mother sole custody of their son, Shawn, now age 11, with the proviso that mother "shall not move the residence of herself and the child outside a 20–mile radius of their present residence, without first obtaining the consent of the [father] or an order of the Court."

Mother, who held a master's degree in choral music, had difficulty in obtaining full-time employment at a salary commen-

surate with her skill and training. Her combined earnings during the 1986–87 academic year totaled $15,000.

In order to qualify for a collegiate teaching position, mother applied and was accepted into the doctoral program at the University of Missouri Conservatory of Music in Kansas City, Missouri. Mother selected the Missouri program because of its national reputation for choral music, and because she was advised that her chances of obtaining a collegiate teaching position in Colorado would be increased if she obtained her doctoral degree outside the state of Colorado.

Mother filed a motion seeking court permission to move to Kansas City with Shawn, then age 6, for the duration of her doctoral program. Father had previously filed a motion seeking to be made the legal custodian. He subsequently amended his motion to seek joint custody and to designate himself as the residential custodian.

In May 1988, the trial court granted the mother permission for a two-year absence from Colorado and denied the father's cross-motion to modify custody. On appeal, a division of this court affirmed the temporary change of residence, but remanded the case for a determination of father's motion for joint custody. *In re Marriage of Murphy*, 776 P.2d 1173 (Colo. App.1989).

On remand, in May 1990, the trial court denied the motion for joint custody, finding, among other things, that the parties had significant "irreconcilable" differences and a long-standing inability to communicate. Neither party appealed the court's order.

During the two years that the mother and Shawn resided in Kansas City, the child visited the father in Colorado on a monthly basis at mother's expense.

On July 31, 1990, the mother filed a motion to remove Shawn to the state of Iowa. The motion recited that, despite her numerous efforts, mother had been unable to secure a collegiate teaching position in Colorado, Wyoming, Arizona, or Nebraska. It further stated that mother had received only one offer of employment, from Mount Mercy College in Cedar Rapids, Iowa, and that she had felt financially compelled to accept that position.

Father objected to mother's motion and obtained a temporary restraining order which prevented mother from removing Shawn from Colorado. A full hearing could not be scheduled until December 5, 1990. Following a limited hearing on August 31, 1990, the court denied mother's request to remove Shawn and, instead, granted father temporary custody of Shawn pending the December 1990 hearing.

In the interim, on October 18, 1990, father filed a motion for temporary custody and simultaneously renewed his motion to change the mother's sole custody to joint custody, with the father designated as Shawn's residential custodian.

The trial court denied father's motion for joint custody under § 14–10–131.5(2), C.R.S. (1987 Repl.Vol. 6B), which proscribes a two-year interval between the disposition of a joint custody motion and the filing of a new joint custody motion.

Mother returned to Colorado for the December 1990 hearing. At that hearing, a psychologist retained by her testified that Shawn views his mother as his primary caretaker and that he wished to move with her to Iowa. This testimony was verified by Shawn's court-appointed guardian ad litem. Both the psychologist and Shawn's guardian ad litem gave their opinions that the out-of-state move would be in Shawn's best interest, provided that Shawn maintain contact and visitation with his father.

The trial court stated that it was denying mother's request to remove Shawn. However, as father notes in his brief on appeal, "the trial court actually partially granted the mother's motion to move the child out of state, since the order allows the mother to take the child to Iowa in alternating years."

After characterizing the essence of the case as being one of "joint custody," the court devised an indefinite "temporary" order which alternates physical custody of

Shawn between the parents on a yearly basis. It ruled that:

> [T]emporary custody of the child is transferred forthwith to the father. Said temporary custody shall continue with the father until ... the end of the school year in May or June of 1991.
>
> ....
>
> Custody will be then transferred to the mother until ... the end of the school year in 1992. Thereafter temporary custody of the child will be transferred on an alternating basis following the same schedule.

The trial court made none of the requisite findings under § 14-10-131, C.R.S. (1987 Repl.Vol. 6B) to justify a modification of sole custody. Mother has appealed the order, asserting that it constitutes a gross abuse of discretion.

## I.

Initially, we address the threshold question of our jurisdiction to hear the appeal. Temporary custody orders are generally entered during the pendency of a dissolution action but may be entered in plenary proceedings as well. Section 13-10-125, C.R.S. (1987 Repl.Vol. 6B); *see generally* 2 L. McCahey, *Child Custody & Visitation* § 8.01[4] (1991). Temporary custody orders are interlocutory and not subject to appellate review. *In re Marriage of Henne*, 620 P.2d 62 (Colo.App. 1980).

However, when the effect of an order is to be permanent, its designation as a temporary "experiment" is not controlling. *In re Marriage of Kondos*, 109 Ill.App.3d 615, 65 Ill.Dec. 191, 440 N.E.2d 1046 (1982). Therefore, whether a child custody order is interlocutory or final is determined from the substance of the order, and not its designation. 2 L. McCahey, *Child Custody & Visitation, supra.*

Here, although the trial court characterized its order as temporary, the order was for an indefinite duration and contained no express provision for further judicial review or modification. Apart from the court's designation, the order was otherwise indistinguishable from a permanent custody order. Thus, the order constituted a permanent adjudication of custody and is, accordingly, subject to appellate review under C.A.R. 1(a)(1).

## II.

Mother contends the trial court erred (1) by disregarding the governing criteria for modifying sole custody under § 14-10-131(2), C.R.S. (1987 Repl.Vol. 6B), and (2) by only partly granting her motion to remove the child from the State of Colorado. We agree with both contentions.

### A.

A change in physical custody is tantamount to a modification of custody and is governed by the statutory standards for modifying custody. *McGraw v. District Court*, 198 Colo. 489, 601 P.2d 1383 (1979). Application of the modification standard for sole custody, § 14-10-131(2), or the standard for joint custody, § 14-10-131.5, C.R.S. (1987 Repl.Vol. 6B), depends on the custody decree being modified, not the extent of visitation exercised by the non-custodial parent. *In re Marriage of Perry*, 754 P.2d 1388 (Colo.App.1988).

Section 14-10-131(2) provides that a trial court *"shall not* modify a prior custody decree"* awarding one party sole custody unless it finds that:

> (a) The custodian agrees to the modification;
>
> (b) The child has been integrated into the family of the petitioner with the consent of the custodian; or
>
> (c) The child's present environment endangers his physical health or significantly impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

The statute is unambiguous as to its requirements. Only after one of these statutory conditions is found to exist may the court enter an order changing sole custody. *In re Marriage of Harris*, 670 P.2d 446 (Colo.App.1983).

Here, since mother has neither consented to the modification nor to Shawn's integration into father's home, the trial court could modify her sole custody only by making explicit findings of physical or emotional endangerment to Shawn *and* a finding that the potential harm to him in his existing custodial environment outweighed the benefits of the proposed change. Because these requisite findings were not made, the modification order is erroneous as a matter of law and cannot stand. *In re Marriage of Harris, supra.*

Accordingly, the original custody decree awarding sole custody to mother remains as controlling, and any future motions to modify custody must be addressed in accordance with the criteria set forth in § 14-10-131. *In re Marriage of Perry, supra.*

### B.

We also agree with mother that the trial court erred by only partly granting her motion to remove the child from Colorado.

■ A motion to remove a child from Colorado is governed by the best interest standard set forth in § 14-10-124. *In re Marriage of McGee,* 44 Colo.App. 330, 613 P.2d 348 (1980).

■ If restrictions against leaving the state with the child are contained in the dissolution decree or separation agreement, the custodial parent requesting the removal has the initial burden of proving that removal is in the child's best interest. However, a *prima facie* case for removal is established when the petitioner shows a sensible reason for the move and that the move is consistent with the child's best interests. *Nelson v. Card,* 162 Colo. 274, 425 P.2d 276 (1967); *In re Marriage of Murphy, supra; see In re Marriage of Casida,* 659 P.2d 56 (Colo.App.1982).

Once a *prima facie* case is established, the burden shifts to the non-custodial parent. Thus, the court should grant removal unless the non-custodial parent proves that the child's move outside the state with the custodial parent is detrimental to the child's best interests. *See In re Marriage of Casida, supra* ("Husband, having as-

serted that the proposed move was detrimental to the best interests of the child, assumed the burden of proving the allegation....").

As the court noted in *Casida,* placing this burden on the party opposing the relocation is fair because it encourages private resolution of the "emotional and idiological [sic] issues both parents invariably confront in these cases." The *Casida* court implicitly recognized that, although a custodial parent's move with the child will invariably be extremely painful to the non-custodial parent, and often to the child, the nature of our mobile society, combined with economic and social realities, have now made these out-of-state moves frequent and predictable.

■ In the context of a removal motion, consideration of the child's best interest should include, but not be limited to, the following factors: (1) whether there is a sensible reason for the move by the custodial parent; (2) whether there is a reasonable likelihood the proposed move will enhance the quality of life for the child and the custodial parent, *Nelson v. Card, supra;* (3) whether the court is able to fashion a reasonable visitation schedule for the non-custodial parent after the move, *Tanttila v. Tanttila,* 152 Colo. 445, 382 P.2d 798 (1963); *In re Marriage of McGee, supra;* (4) what are the motives of the non-custodial parent in resisting removal, *see Bernick v. Bernick,* 31 Colo.App. 485, 505 P.2d 14 (1972); (5) whether the non-custodial parent's motion to prevent removal is, in effect, a request for a change of custody and none of the provisions of § 14-10-131 respecting change of custody have been established by the evidence, *In re Marriage of Casida, supra;* and, (6) what are the practical effects of an order denying the custodial parent's request for removal, that is, the emotional harm that may be presumed to occur to the child if it is necessary or desirable for the custodial parent to leave the state and the child is not permitted to go.

■ Here, mother presented ample evidence that the move to Iowa was motivated

by economic necessity and not by a desire to disturb the relationship with the father.

In addition, mother remarried in November 1990, and her new spouse resides and works in Iowa. The evidence shows that she and her new husband are able to provide a comfortable home for Shawn and a good relationship exists between Shawn and his stepfather. *See Nelson v. Card, supra* (it was in the best interests of the child to allow an out-of-state move if the custodial parent remarried and her spouse was offered favorable employment in another state). Mother's family also lives in Iowa and there is evidence in the record that Shawn would have frequent contact with numerous relatives.

Further, mother presented evidence that the move not only benefitted her professionally, but also would benefit Shawn. Mother's starting salary at Mount Mercy College is $27,000 and, as chairman of the music department, she is qualified for accelerated tenure. The college offers good employment benefits and, importantly, as the child of a professor, Shawn would be entitled to free tuition at Mount Mercy College and other institutions of higher learning, including such prestigious schools as Marquette and DePaul Universities. Further, since Shawn is a violin student, he would have access to good schools and numerous extracurricular activities, including a violin symphony.

Also adding to the necessity of mother's move is the fact that despite the existence of a court order requiring father to pay $150 per month child support, mother has been forced to bring repeated enforcement actions for collection of support.

In summary, mother's evidence here demonstrated a *prima facie* case in favor of removal. *See In re Marriage of Barnthouse,* 765 P.2d 610 (Colo.App.1988). Thus, the burden shifted to the father to show that the move would be detrimental to Shawn. We conclude that father failed to meet his burden.

Here, father was not able to prove the move was detrimental to Shawn because, as he conceded, the court "actually partially granted" mother's motion for removal

but delayed the move for one year and, thereafter, allowed the child to move in alternate years.

Although father alleges that mother moved primarily to restrict his contact with Shawn, the evidence presented was to the contrary, and the trial court has rejected similar allegations from father in the past. In April 1990, the court found that mother had complied fully with the court's visitation orders during her previous residence in Missouri. And, at the December 1990 hearing, father stipulated that mother had made a diligent attempt to obtain appropriate employment in Colorado and surrounding states and had failed to do so. Also, the testimony by a psychologist refuted father's allegation.

 Even if we were to assume *arguendo* that one of mother's motives for leaving Colorado was to distance herself from her former spouse, this fact, in and of itself, does not preclude the out-of-state move. Rather, it is only one of numerous factors that the court should consider especially where, as here, there are several other reasons for mother's moving to Iowa which are not related to the father.

Father also argues that allowing Shawn to move to Iowa will prevent him from exercising weekly visitation with his son. Although it is true that weekly visitation will be impossible if Shawn moves to Iowa, this factor alone is insufficient, as a matter of law, to show that the move is not in Shawn's best interests, especially since mother has proposed a liberal visitation schedule.

In *Nelson v. Card, supra,* our supreme court stated:

A change in the father's visitation privileges is an unfortunate but not unusual result of a broken marriage. Injured feelings of the divorced parents must give way to what the court feels is for the best interests of the child.

*See Bernick v. Bernick, supra* (predominant consideration in any custody or visitation dispute is the child's best interest because custody is "primarily a right of the children and secondarily a right of the [par-

ents]."); *see also* § 14–10–123.4, C.R.S. (1987 Repl.Vol. 6B).)

In summary, when the appropriate standard is applied to the circumstances before us, we conclude that the trial court erred in not granting mother's motion for removal and in substituting a year-by-year alternative custody plan.

The trial court's order subordinated the child's paramount interests to the wishes of the parents and is contrary to established law. *See Searle v. Searle*, 115 Colo. 266, 172 P.2d 837 (1946); *In re Marriage of Lester*, 791 P.2d 1244 (Colo.App.1990).

We note that courts in other jurisdictions have also approved removal under similar circumstances. *In re Marriage of Gratz*, 193 Ill.App.3d 142, 139 Ill.Dec. 611, 548 N.E.2d 1325 (1989); *In re Marriage of Cornish*, 780 S.W.2d 62 (Mo.App.1989).

We emphasize that, even if a trial court determines that it is *not* in the best interests of a child to grant removal to another state and that it would be detrimental to do so, the order denying removal based upon the "best interest" test does not justify an order granting a change of sole custody. In order to modify sole custody, the trial court must also find that one of the statu-

tory conditions required by § 14–10–131(2) exists.

We are cognizant that approximately 15 months have elapsed since the 1990 hearing and that Shawn has had the opportunity to reside in both Colorado and Iowa during this interval. Hence, the matter must be remanded for resolution of mother's motion for removal, and the trial court may, in its discretion, hold a new hearing and receive additional evidence on that issue.

The order modifying custody is reversed, and the prior custody decree is reinstated. The cause is remanded with directions that the trial court address mother's motion to remove Shawn from Colorado and to enter an order consistent with the child's best interests and the other guidelines set forth herein. The physical custody of Shawn shall remain with his mother until entry of the trial court order on remand.

STERNBERG, C.J., and HODGES *, J., concur.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, § 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).