In re the MARRIAGE OF Karen
S. WALL, Appellee,

and

Frank N. Wall, Appellant.

No. 91CA1882.

Colorado Court of Appeals,
Div. V.

Oct. 22, 1992.

Rehearing Denied Dec. 3, 1992.

Certiorari Granted May 10, 1993.

John C. Schaefer, Denver, for appellee.
Susan J. Dycus, Denver, for appellant.

Opinion by Judge HUME.

Frank N. Wall (father) appeals the trial court's modification of an order awarding him sole custody of the parties' children to one providing for joint custody. We affirm.

The marriage of father and Karen S. Wall (mother) was dissolved in 1987, and the decree incorporated the parties' agreement to share joint custody of their two children. Approximately two years later, the parties stipulated to, and the court approved, a modification of the decree, giving the father sole custody of the children. Thereafter, as pertinent here, mother filed

---

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

a motion for modification of sole custody pursuant to § 14–10–131(2), C.R.S. (1987 Repl.Vol. 6B).

At the commencement of the hearing, the mother verbally amended her motion to request the resumption of joint custody and conceded that a continuance, if desired by the father, would be appropriate. However, the father did not object to the amendment of mother's motion, nor did he request a continuance either before or after the presentation of evidence.

The trial court considered and granted the mother's motion under the best interest standard of § 14–10–131.5(4), C.R.S. (1987 Repl.Vol. 6B). In addition, it specifically found that the additional element of proof imposed by § 14–10–131(2), and not found in § 14–10–131.5(4), *i.e.*, endangerment to the children's physical health or significant impairment of their emotional development, had not been established.

Father contends that, since the mother requested a change *from* sole custody, the plain language of § 14–10–131(2) requires a finding of physical endangerment or significant emotional impairment before such change may be granted. He argues that, by focusing on the standard applicable to the form of custody being changed *to*, the statutory intent regarding modification of custody is ignored and the provisions of §§ 14–10–131(2) and 14–10–131.5 are rendered conflicting. We are not persuaded.

■ In construing a statute, our primary purpose is to determine and give effect to the legislative intent. *Boulder County Board of Equalization v. M.D.C. Construction Co.*, 830 P.2d 975 (Colo.1992). We first look to the statutory language and give the words and phrases their plain and ordinary meaning, and we are obliged to construe an entire statutory scheme in a manner that gives consistent, harmonious, and sensible effect to all of its parts. *Climax Molybdenum Co. v. Walter*, 812 P.2d 1168 (Colo.1991).

■ If the intended scope of the statutory language is unclear, the court may consider the consequences of a particular construction. *Jones v. Cox*, 828 P.2d 218 (Colo.1992).

Accordingly, we must attempt to harmonize § 14–10–131.5(4) with § 14–10–131, to the extent this is possible. In doing so, the legislative background of the provisions regarding joint custody is helpful.

Until 1983, Colorado had no statutes recognizing the concept of joint legal custody. Prior to that time, the pertinent statute had dealt exclusively with procedures applicable to modification of custodial orders vesting custody solely with one parent or party. *See* Colo.Sess.Laws 1971, ch. 130, § 46–1–31 at 532.

In 1983, two separate joint custody bills were introduced for consideration by the General Assembly. One of those bills, Senate Bill 348, was patterned after California statutes in which the term "joint custody" embodied both "joint legal custody" (shared decision-making rights, responsibilities, and authority relating to the child's health, education and welfare) and "joint physical custody" (alternative residential stewardship of the child). Senate Bill 348 also contained a legislative preference in the form of a rebuttable presumption that parental joint custody is in the best interest of the child. That presumption would have required a court to make specific findings and to specify reasons why joint custody was not awarded in any parental custody proceedings. Senate Bill 348 was not adopted.

The second bill introduced in 1983, Senate Bill 286, as ultimately adopted by the General Assembly, defined "joint custody" as authority for shared decision-making and provided that orders awarding joint custody "may designate one party as a residential custodian." *See* Colo.Sess Laws 1983, ch. 178, § 14–10–123.5(1) at 645. The initial bill was also amended to limit the court's authority to award joint custody only to those situations in which there was agreement of the parties. *See* Colo.Sess. laws 1983, ch. 178, § 14–10–124(1.5)(5) at 647.

Although the General Assembly declined to enact a presumptive preference for joint custody, it did adopt the following aspira-

tional language in the form of a legislative finding and declaration:

> [I]t is in the best interest of all parties to encourage frequent and continuing contact between each parent and the minor children of the marriage after the parents have separated or dissolved their marriage. In order to effectuate this goal, the general assembly urges parents to share the rights and responsibilities of child-rearing, and to encourage the love, affection, and contact between the children and the parents.

Colo.Sess.Laws 1983, ch. 178, § 14–10–124(1) at 647.

As a part of Senate bill 286, the previously existing statute governing modification of custody orders was amended as follows:

> Modification OF SOLE CUSTODY. (1) If a motion for modification OF A DECREE GRANTING CUSTODY TO ONE PARTY has been filed ... no subsequent motion may be filed within two years after disposition of the prior motion unless ... there is reason to believe that the child's present environment may endanger his physical health or significantly impair his emotional development.

*See* Colo.Sess.Laws 1983, ch. 178, § 14–10–131(1) at 648 (amendatory language capitalized). Identical language was also added to the substantive standard for modification in § 14–10–131(2). *See* Colo.Sess Laws 1983, ch. 178 at 648.

As a part of the same bill, an entirely new section was added, as follows:

> Joint custody modification-termination. (1) Except as provided in subsection (3) of this section, an award of joint custody may be modified or terminated upon motion of one or both parties or on the court's own motion, if such modification or termination is in the best interest of the child, as specified in section 14–10–124(1.5), and the harm likely to be caused by the change of environment is outweighed by the advantage of such change to the child.
>
> . . . .
>
> (2) No motion for modification of joint custody may be filed within two years after disposition of a prior motion for modification unless ... adequate cause for hearing the motion is established. . . .
>
> . . . .
>
> (4) Any order awarding custody of a minor child entered by a court of this state ... *may be modified from sole custody to joint custody at any time pursuant to this section.* (emphasis added)

Colo.Sess.Laws 1983, ch. 178, § 14–10–131.5 at 646 and 647.

In 1987, the General Assembly again amended § 14–10–124(1.5) so as to confer authority upon the trial court to enter a joint custody decree on the motion of either party or upon the court's own motion. The factors to be considered by the court in determining the best interest of the child were also restated and broadened by the same amendment. In addition, the term "joint custody" was redefined to delineate more clearly the concept of joint decision-making authority and to separate that concept from the concept of residential custodianship of the child. *See* Colo.Sess.Laws 1987, ch. 110, at 574.

Thus, at the time of its adoption, § 14–10–131.5(4) allowed the entry of joint custody orders only upon the parties' agreement. The court had no authority under the 1983 amendments to enter an order or decree for joint custody over the objection of either of the child's parents, and, in this context, the best interest standard set forth in § 14–10–131.5(1) only allowed the court to exercise a veto power over the parents' agreement for entry of a joint custody decree or order.

However, with the broadening of the court's authority to enter joint custody awards under the 1987 amendments, the best interest standard took on additional significance. After the passage of that amendment, the best interest standard evolved from a veto standard to a modification standard.

Significantly, despite the 1987 changes in the substantive factors comprising the best interest standard and the broadening of the court's authority to award joint custody in

the absence of the parties' agreement, the General Assembly made no change in the modification standard set forth in § 14–10–131.5(4). The best interest standard remained applicable to motions to modify sole custody awards so as to provide for joint custody under the 1987 amendatory legislation.

In our view, this chronology of events discloses a legislative choice to apply a less stringent standard to motions to convert prior sole custody decrees or orders into joint custody awards than that applied in changing sole custody from one parent or party to the sole custody of another. This choice is in keeping with the aspirational policy still expressed in § 14–10–124(1), C.R.S. (1987 Repl.Vol. 6B). It is also reflective of the legislative recognition that a change in legal custody does not necessarily result in as disruptive a change to the child as that occasioned by a change in residential custody. *See Sanborn v. Sanborn*, 123 N.H. 740, 465 A.2d 888 (1983).

Also, to the extent that the language of § 14–10–131 is in conflict with that of § 14–10–131.5(4), the latter provision, having been the later adopted substantive change, is controlling. *See* §§ 2–4–206 and 2–4–301. C.R.S. (1980 Repl.Vol. 1B). In addition, § 14–10–131.5(4) more specifically applies to changes from sole to joint custody, while § 14–10–131 applies generally to modification of sole custody orders. Thus, under § 2–4–205, C.R.S. (1980 Repl.Vol. 1B), the more specific applicable statute is deemed controlling.

We recognize that different divisions of this court have previously arrived at seemingly inconsistent interpretations of these statutes. *See In re Marriage of Murphy*, 834 P.2d 1287 (Colo.App.1992); *In re Marriage of Murphy*, 776 P.2d 1173 (Colo.App. 1989); *In re Marriage of Perry*, 754 P.2d 1388 (Colo.App.1988).

However, each of the cited cases selects either § 14–10–131 or § 14–10–131.5 and interprets that statute as being clear and unambiguous according to its own terms, without any attempt to harmonize the two statutes.

■ Here, we attempt to harmonize the provisions of §§ 14–10–131 and 14–10–131.5, to the extent they appear conflicting in order to effectuate the legislative intent and purpose underlying their enactment. Hence, to the extent that our interpretation conflicts with that adopted in the 1992 *Murphy* case and *In re Marriage of Perry*, we decline to follow those decisions.

We conclude that the provisions of § 14–10–131 apply only if a request is made to change a prior order or decree placing sole custody with one party to an order placing sole custody with a different parent or party.

Here, the motion was amended to request a change from sole to joint custody. Under these circumstances, § 14–10–131.5 is the controlling statute.

■ Although the trial court specifically found that the children's physical health was not endangered and that their emotional health was not significantly impaired under the prior sole custody order, it also found that both parties could make joint custody work and that the overriding consideration in promoting the best interest of the children was that each parent should have involvement in the decision-making process concerning the children's welfare. Thus, the trial court concluded that the change to joint legal custody was in the best interest of the children and that the harm likely to be caused by such change was outweighed by its advantage to the children's best interest.

This determination is supported by the record, and therefore, it may not be disturbed on review. *Rhoades v. Rhoades*, 188 Colo. 423, 535 P.2d 1122 (1975).

We do not view this appeal as frivolous and, therefore, deny the mother's request for costs and attorney fees incurred on appeal.

The order is affirmed.

JONES and MARQUEZ, JJ., concur.