**In re the MARRIAGE OF Frank N. WALL, Petitioner,**

**and**

**Karen S. Wall, Respondent.**

**No. 93SC001.**

Supreme Court of Colorado, En Banc.

Feb. 7, 1994.

---

Susan J. Dycus, Denver, for petitioner.

John C. Schaefer, Denver, for respondent.

Justice SCOTT delivered the Opinion of the Court.

We granted certiorari to review the decision of the court of appeals in the case *In re the Marriage of Karen S. Wall and Frank N. Wall,* 851 P.2d 224 (1992). In that case the court of appeals held that a motion by a non-custodial parent seeking a modification from sole custody to joint custody may be granted without a showing of endangerment to a child's health or an impairment of the child's emotional development as is required under section 14–10–131(2), 6B C.R.S. (1987), and that instead, the proper standard for assessing the propriety of such a motion is governed by section 14–10–131.5(4), 6B C.R.S. (1987), the "best interest of the child" standard. In so holding, the court of appeals upheld the trial court's order modifying custody of the Wall children from sole custody in the father to joint custody in the father and the mother. We affirm the judgment of the court of appeals.

I

On June 17, 1987, a court decree was entered dissolving the marriage of petitioner Frank N. Wall (hereafter "the father") and respondent Karin S. Wall[1] (hereafter "the mother"). The decree incorporated the parties' agreement to share joint legal custody with the mother designated as the primary residential custodian of their two children, who were then four years and eighteen months old, respectively. Beginning in early 1989 and throughout most of that year, the mother experienced serious health problems,[2] and as a result she was unable to discharge her duties as custodial parent. In June, 1989, when the mother's health did not improve, the father suggested to the mother

---

**1.** Although the caption of the published case spells the mother's first name as "Karen," *see supra,* the proper spelling is "Karin."

**2.** The record indicates that during this period of time, the mother experienced severe medical difficulties. She eventually underwent surgery to correct her medical problems.

that he assume the full care of their children. The mother agreed, and on June 5, 1989, the mother and father stipulated to a modification of the joint custody order. The trial court approved the stipulation and entered an order awarding sole custody to the father and providing liberal visitation rights to the mother until further order of the court.

Over a year later, on December 6, 1990, the mother filed a motion seeking a modification of the June, 1989, order granting sole custody of the children to the father. The mother specifically asked that the trial court grant her sole custody of the children, and as grounds she asserted her recovery from her physical and emotional maladies and her ability to resume duties as residential custodial parent. She also alleged facts that, if proven, would satisfy the statutory criteria for a change of sole custody under section 14–10–131(2)(c), 6B C.R.S. (1987),[3] the provision of the state Uniform Dissolution of Marriage Act entitled "modification of sole custody." In her motion, the mother claimed that the current living environment in the custody of the father endangered the physical health of the children and significantly impaired their emotional development. A hearing was held on October 3, 1991, wherein, pursuant to C.R.C.P. 15(b)[4] and without objection from the father, the mother amended her pending motion for custody modification to request an award of joint custody.[5]

By order dated November 13, 1991, the trial court granted the mother's motion to modify custody after setting forth specific findings of fact. In its order, the trial court held that the children's physical or emotional health was not jeopardized by virtue of the father having sole custody of the children;

however, the trial court concluded that the children's best interests lay in having the mother participate as fully as possible in important decisions regarding the children. In addition, although the trial court held that the father should continue as primary residential custodian of the children, it ultimately determined that the change from sole custody to joint custody would be in the best interests of the minor children and that the harm likely to be caused would be outweighed by the advantage of such change to the children. Consistent with its findings, the court awarded joint custody and continued the father as the primary residential custodian.

On appeal to the court of appeals, the father argued that section 14–10–131(2) governed motions for a change from sole custody to joint custody. The father asserted that under the express and unambiguous language of that provision, a prior custody decree is not subject to modification unless the trial court makes a special finding that the child's environment either endangers the child's physical health or significantly impairs the child's emotional development. According to the father, the trial court failed to apply section 14–10–131(2) and in its place, erroneously applied the criteria contained in section 14–10–131.5(4)[6] the "best interest" standard, as defined by section 14–10–124(1.5), 6B C.R.S. (1987).[7] The father thus contended that the trial court's approval of the mother's motion for modification of sole to joint custody was in error.

Following its analysis that included a review of the inception and evolution of joint custody legislation in Colorado, *see In re*

---

3. *See* § 14–10–131(2)(c) set out at p. 391, *infra.*

4. C.R.C.P. 15(b) provides, in pertinent part, as follows:

   **(b) Amendments to Conform to the Evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time[.]

   868 Pac. 2d. Rptr. -10

5. Although the mother confessed that a continuance was proper under circumstances where, as in the instant case, the motion was made orally without notice to the opponent, the father did not request a continuance.

6. *See* language of § 14–10–131.5(4), in relevant part, at pp. 393–394, *infra.*

7. Section 14–10–124(1.5)(a–m) lists thirteen relevant factors that a trial court must consider in order to determine whether joint or sole custody following the dissolution of a marriage would be in the "best interest" of the child.

*Marriage of Wall,* 851 P.2d 224, 225–227 (Colo.App.1992), the court of appeals rejected the father's argument on the ground that the legislative history of the relevant statutory provisions

> discloses a legislative choice to apply a less stringent standard to motions to convert prior sole custody decrees or orders into joint custody awards than that applied in changing sole custody from one parent or party to the sole custody of another. This choice is in keeping with the aspirational policy ... expressed in [section] 14–10–124(1), [6B] C.R.S. (1987). It is also reflective of the legislative recognition that a change in legal custody does not necessarily result in as disruptive a change to the child as that occasioned by a change in residential custody.

*In re Marriage of Wall,* 851 P.2d at 227. The court of appeals also concluded that

> to the extent that the language of [section] 14–10–131 is in conflict with that of [section] 14–10–131.5(4), the latter provision, having been the later adopted substantive change, is controlling. In addition, [section] 14–10–131.5(4) more specifically applies to changes from sole to joint custody, while [section] 14–10–131 applies generally to modification of sole custody orders. Thus, under [section] 2–4–205, [1B] C.R.S. (1980), the more specific applicable statute is deemed controlling.

> . . . .

> We conclude that the provisions of [section] 14–10–131 apply only if a request is made to change a prior order or decree placing sole custody with one party to an order placing sole custody with a different parent or party.

*Id.* (citations omitted). Thus the court of appeals held that a motion for a modification from sole custody to joint custody was not subject to the terms of section 14–10–131(2), i.e., that such motions may be granted without a showing of endangerment to the children's health or an impairment of emotional development; that section 14–10–131.5(4) is · the applicable statute in such instances; and finally, that the trial court's ruling granting a modification to joint custody is supported by the record.[8]

We granted the father's petition for certiorari review of the court of appeals' judgment in order to determine which statute controls joint custody determinations and the appropriate standard to be applied by courts. Because the court of appeals was correct in its holding that section 14–10–131.5 is the controlling statute in those cases where a noncustodial parent seeks a modification from sole custody to joint custody, we affirm.

II

A

In order to determine which of the statutory provisions raised by the parties in this case is applicable.to motions for modification of sole custody to joint custody, it is necessary to examine the plain language of relevant statutes and to conduct an analysis cognizant of their historical context. We thus begin our analysis with an examination of section 14–10–131(2)(c),[9] the provision of the Colorado Uniform Dissolution of Marriage

---

8. The court of appeals also observed that "different divisions of this court have previously arrived at seemingly inconsistent interpretations of these statutes, [e.g.,] *In re Marriage of Murphy,* 834 P.2d 1287 (Colo.App.1992); *In re Marriage of Murphy,* 776 P.2d 1173 (Colo.App.1989); *In re Marriage of Perry,* 754 P.2d 1388 (Colo.App. 1988)." *In re Marriage of Wall,* 851 P.2d at 227. Noting that "each of the cited [court of appeals'] cases selects either [section] 14–10–131 or [section] 14–10–131.5 and interprets that statute as being clear and unambiguous according to its own terms, without any attempt to harmonize the two statutes ..." the *Wall* court also expressly declined to follow these decisions. *Id.* Thus the court of appeals' analysis in the present case differs from prior analyses conducted by other panels of the court of appeals that have been presented with this same issue, in that it attempts to reconcile §§ 14–10–131 and 14–10–131.5.

9. Subsections (a) and (b) of § 14–10–131(2) require a court to retain the custodian established by the prior decree unless the custodian agrees to the modification or the child has been integrated into the family of the petitioner with the consent of the custodian. Inasmuch as the father, as custodian, opposes such modification and the children have not been integrated into the family of the petitioner mother, we need not be concerned with these two subsections.

Act (the Act) entitled "modification of sole custody." That statute provides as follows:

**14–10–131. Modification of sole custody.**

. . . .

(2) The court shall not modify a prior custody decree granting custody to one party unless it finds, upon the basis of facts that have arisen since the prior decree . . . that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards, the court shall retain the custodian established by the prior decree unless:

. . . .

(c) The child's present environment endangers his physical health or significantly impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Although this section is substantially unchanged from the original version which was enacted in 1963, section 46–1–31(2)(a) and (d), 12 C.R.S. (Cum.Supp.1963), repealed and reenacted June, 1971, ch. 130, sec. 1, § 46–1–31(2)(a) and (d), 1971 Colo.Sess.Laws 520, 532, in June, 1983, certain amendatory terms were added to the provision by the General Assembly. Those terms, now assimilated into section 14–10–131, can be noted in the following highlighted portions of that provision: "**14–10–131. Modification of SOLE CUSTODY** . . . . The court shall not modify a prior custody decree *GRANTING CUSTODY TO ONE PARTY* unless it finds . . . that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." Ch. 178, sec. 5, § 14–10–131(2), 1983 Colo.Sess.Laws 645, 648 (amendatory language capitalized and underscored) (now § 14–10–131(2), 6B C.R.S. (1987)).

It is self-evident that in denominating this section "modification of sole custody," and in incorporating the language, "granting custody to one party," into subsection (2) of the provision, the General Assembly intended to make this provision applicable to those cases where sole custody of the child or children has been awarded, and a change in that status is sought by the non-custodial parent. *See Goebel v. Colorado Dept. of Institutions,* 830 P.2d 1036 (Colo.1992) (holding that to discern the General Assembly's intent in enacting a statute, the court should look to the language itself, giving the statutory terms their commonly accepted and understood meaning); *accord Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991); *People v. Guenther,* 740 P.2d 971 (Colo.1987). Because section 14–10–131 is silent as to whether it applies to every case in which a change in custody is sought by the non-custodial parent, we next look to other statutory provisions relevant to custody modification. *Matter of Estate of Royal,* 826 P.2d 1236 (Colo. 1992) (concluding that when statute is silent on issue, it should be construed to effectuate expressed purpose of act); *City of Lakewood v. Mavromatis,* 817 P.2d 90 (Colo.1991) (holding that a court should determine legislative intent from plain language of statute, construing it as a whole and giving effect to all of its parts); *City of Florence v. Board of Waterworks of Pueblo,* 793 P.2d 148 (Colo. 1990) (stating that in construing statutes, provisions should be read in harmony with overall statutory scheme).

At the same time that the General Assembly amended section 14–10–131,[10] it added several entirely new sections to the Act addressing modifications of joint custody and changes from sole custody to joint custody. Addressing modifications of joint custody, section 14–10–131.5(1), in relevant part, provides as follows:

**14–10–131.5. Joint custody modification—termination.** (1) . . . [A]n award of joint custody may be modified or terminated upon motion of one or both parties or on the court's own motion, *if such modification or termination is in the best interest of the child, as specified in section 14–10–124(1.5), and the harm likely to be*

---

**10.** Both the amendatory language contained in § 14–10–131 and the addition of § 14–10–131.5 were part of Senate Bill No. 286.

*caused by the change in environment is outweighed by the advantage of such change to the child.*

Ch. 178, sec. 2, § 14–10–131.5(1), 1983 Colo. Sess.Laws 645, 646–47 (now § 14–10–131.-5(1), 6B C.R.S. (1987) (emphasis added)). In adopting this provision, together with the amended portions of section 14–10–131, the General Assembly essentially established dichotomous standards for custody modifications, i.e., those dealing with modifications of sole custody and those addressing modifications of joint custody. It is noteworthy that the *normae* established for a change in sole custody pursuant to section 14–10–131, *vis-a-vis* a modification in joint custody under section 14–10–131.5(1), differ significantly. The standard enunciated in section 14–10–131, the "endangerment standard," requires a trial court to find that the child's environment poses a risk of harm to the child before a custody modification can be granted, whereas section 14–10–131.5(1) is comparatively more permissive and its requirements may be met whenever a court finds that a change in custody is in the child's "best interest." *Compare In re Marriage of Harris,* 670 P.2d 446 (Colo.App.1983) *with In re Marriage of Murphy,* 776 P.2d 1173 (Colo.App.1989), *remanded in* 834 P.2d 1287 (Colo.1992).

At least partly, these differences may be explained by virtue of the passage of time from the date of enactment of section 14–10–131 until the enactment of section 14–10–131.5(1), and the consequent evolution in prevailing societal notions pertaining to sole custody and joint custody awards. It was not until the mid–1970s that, absent a finding of "unfitness," the validity of the presumption that children "belonged with their mothers" was ever questioned. *See generally,* Martha L. Fineman, *The Politics of Custody and the Transformation of American Custody Decision Making,* 22 U.C. Davis L.Rev. 829 (1980). Around this time, however, "[g]ender considerations as a way to make custody decisions began to fade from favor and were even attacked as unconstitutional in some states." *Id.* at 836. Thus because of the strong presumption that existed favoring the mother as sole custodian of the children after divorce—a view widely accepted in 1963 in this state when section 14–10–131 was originally enacted, *see Kelley v. Kelley,* 161 Colo. 486, 492, 423 P.2d 315, 318 (1967) (stating the general rule that the custody of a child of tender years is ordinarily given to the mother)—the strict standards for a modification of sole custody awards under section 14–10–131 operated to preserve that presumption.[11]

B

In the late 1970s and early 1980s, many jurisdictions abandoned the gender-based "mother as sole custodian" presumption, recognizing the importance of the contributions of both parents to child-rearing. Indeed, contemporaneously with the enactment of the amendatory language of sections 14–10–131 and 14–10–131.5(1), the General Assembly enacted section 14–10–124. This section, entitled "best interest of child," is drawn in the form of a legislative declaration and provides as follows:

**14–10–124. Best interest of child.** (1) The general assembly finds and declares that *it is in the best interest of all parties to encourage frequent and continuing contact between each parent and the minor children* of the marriage after the parents have separated or dissolved their marriage. In order to effectuate this goal, *the general assembly urges parents to share the rights and responsibilities of child-rearing,* and to encourage the love, affection, and contact between the children and the parents.

Ch. 178, sec. 3, § 14–10–124(1), 1983 Colo. Sess.Laws 645, 647 (now § 14–10–124(1), 6B C.R.S. (1987) (emphasis added)). Thus in 1983, the General Assembly declared its approval of the more contemporary philosophy that encourages both parents, following the dissolution of their marriage, to share time, effort, and responsibilities devoted to the

---

11. *See also Hearings on S.B. 286 Before the Senate and House Judiciary Comms.* (1983) (testimony by Professor Timothy Walker of the University of Denver College of Law, that "in the last few years ... as a result of a number of lobbying groups it has come to light that about 90% of the sole custody decisions in contested cases are awarded to the mother. And as a result of the 90% of such decisions, there has been a considerable impetus to push for joint custody....").

care of their children. *See People v. Gross,* 830 P.2d 933 (Colo.1992) (noting that in determining the scope of a particular statute and the legislative intent, the best guide is often the legislature's own declaration of policy). In addition to this unambiguous legislative declaration, at the time that the joint custody statute was adopted, Senator Ezzard, the sponsor of the legislation, indicated that

> [t]his is a bill which deals with joint custody. Our current statutes, just to give you an overview, currently the Colorado statute, does not mention joint custody as an option. *And I think the testimony we had in the judiciary committee was overwhelming that that is something we need to correct.* In this day and age, judges are confused about whether or not they can award joint custody in this state.... The committee amendments ... say that the General Assembly finds that it is in the best interests of all the parties involved to encourage both parents to have contact with children in dissolution situations where there are child custody problems to be resolved.

Test. by Sen. Ezzard, House Judiciary Comm. (Second Reading S.B. 286) (1983) (emphasis added).

Notwithstanding this development of conventional thought as to custody awards, however, had the General Assembly limited the scope of its governance solely to the two statutory classifications established in sections 14–10–131 and 14–10–131.5(1), we nevertheless might be compelled to find that all sole custody modifications were subject only to the terms of section 14–10–131. Such is not the case, however.

When the General Assembly enacted section 14–10–131.5, it also included subsection (4), a provision which states as follows: *"Any order* awarding custody of a minor child entered by a court of this state ... *may be modified from sole custody to joint custody at any time pursuant to this section"* (em-

phasis added).[12] With the adoption of subsection (4) of the joint custody modification statute then, the General Assembly contemplated the existence of, and hence provided the standards to be applied in, a third context in custody modifications cases—those wherein a "modifi[cation] from sole custody to joint custody" is requested. § 14–10–131.-5(4). Although the language of section 14–10–131.5(4) is clear and unambiguous, making resort to legislative history unnecessary, *Bloomer v. Board of County Com'rs of Boulder County,* 799 P.2d 942 (Colo.1990), this conclusion is also strongly supported by Senator Ezzard's explanation of the object and application of subsection (4):

> [S]ubsection (4) ... adds a new section to the "best interest" provision allowing the court to order joint custody from anyone seeking custody ... if the joint custody would be in the child's best interest and advantageous to the child. *[P]resent custody modification provisions apply only to sole custody orders, and those modification provisions are very stringent; the child's health or life has to be endangered. Obviously when you have a joint custody situation, you have to create different standards for modification.*

Test. by Sen. Ezzard, House Jud. Comm. (Second Reading S.B. 286) (1983) (emphasis added).

Thus because the General Assembly has *expressly* endorsed a public policy that encourages divorced parents to share custody of their children whenever reasonable, and more important, because the language of section 14–10–131.5(4) plainly and unambiguously applies to "any order" regarding a change from sole custody to joint custody, we agree with the court of appeals that section 14–10–131.5(4) is the controlling statutory provision in such cases. *See Goebel, Guenther,* and *Mavromatis, supra.*

Furthermore, section 14–10–131, governing "sole custody," and section 14–10–131.5, con-

---

**12.** Subsection (4), by its terms, is subject to the standard for modification articulated in § 14–10–131.5(1): an award may be modified "from sole custody to joint custody" if "such modification ... is in the best interest of the child, as specified in section 14–10–124(1.5), and the harm likely to

be caused by the change of environment is outweighed by the advantage of such change to the child. The court shall also take into consideration the pattern of involvement of the parties with the child."

trolling changes from "sole custody to joint custody," are not in conflict when viewed in historical perspective. As noted, we believe the past preference for sole custody awards to the mother, *see Kelley v. Kelley,* 161 Colo. at 492, 423 P.2d at 318, provides a background for understanding the applicability of section 14–10–131. At the time that section was adopted, sole custody modifications, almost as a rule, meant removing the child from the custody of the mother and awarding custody to the father, an action that societal norms and hence the laws based upon public policy discouraged. Only upon a showing of physical or emotional harm to the child, i.e., those standards set out in section 14–10–131, might there be a successful change in sole custody from the mother as sole custodian to the father as sole custodian.

Even assuming, *arguendo,* that the language of section 14–10–131 conflicts with the language of section 14–10–131.5(4), several rules of statutory interpretation resolve any such conflict. Section 14–10–131.5(4) specifically applies to changes from sole custody to joint custody while section 14–10–131 applies broadly to the modification of sole custody. Section 14–10–131.5(4) therefore controls in that more specific statutes prevail over general provisions. § 2–4–205, 1B C.R.S. (1980); *Climax Molybdenum Co. v. Walter,* 812 P.2d 1168 (Colo.1991). Additionally, because section 14–10–131.5(4) is the later adopted substantive change, to the extent that it conflicts with section 14–10–131, that provision must prevail. § 2–4–206, 1B, C.R.S. (1980); *Lin-*

*inger v. City of Sheridan,* 648 P.2d 1097 (Colo.App.1982).

Viewing section 14–10–131, the "sole custody" statute, in light of the 1983 statutory additions providing expressly for "joint custody" and "sole to joint" custody, i.e., 14–10–131.5(1) and (4) respectively, we hold that section 14–10–131 is limited to those cases where a parent has been awarded sole custody and the non-custodial parent is seeking sole custody. Moreover, as relevant here, we hold that where a parent seeks a change in custody from sole custody to joint custody, section 14–10–131.5(4) provides the correct standards for determining whether joint custody shall be granted.[13] We believe that this interpretation facilitates the explicit legislative goal of shared parental rights and responsibilities in child-rearing following marriage dissolution.

## C

Finally, in his argument before this court, the father contends that by affirming the court of appeals we will accomplish what the General Assembly has declined to do, that is, establish a presumptive preference for joint custody. We find this argument unpersuasive. With our holding, we are by no means creating or suggesting that the General Assembly intended to create a presumption in favor of joint custody.[14] Rather, our analysis and conclusions are intended to make clear that the General Assembly has established as public policy in this state, by virtue of enact-

---

13. To the extent that some court of appeals' divisions have held that § 14–10–131 applies to a motion for a change in a prior order of sole custody *to that of joint custody,* those decisions are disapproved, including *In re Marriage of Murphy,* 834 P.2d 1287 (Colo.App.1992) and *In re Marriage of Perry,* 754 P.2d 1388 (Colo.App. 1988).

14. In his testimony before the legislature, Professor Walker compared a competing bill, Senate Bill 348, patterned after a California law "which requires the court to presume that a joint custody award is in the best interest of the children" with "optional joint custody legislation ... after which is patterned our proposed Senate Bill 286, Senator Ezzard's bill." Professor Walker continued,

Senate Bill 286 provides for a definition of joint custody, joint legal custody, joint physical

custody. It provides guidelines for joint custody and it gives the court the option, not the mandate but the option to provide for a joint custody.

*See Hearings on S.B. 286 · Before the Senate and House Judiciary Comms.* (1983). Senator Ezzard, one of the bill's sponsors, spoke to the purpose of Senate Bill 286:

... The major purpose of this bill is to put into Colorado statutes a provision with respect to joint custody.... A few states ... say that [joint custody] shall be a presumption.... [Senate Bill 286] does not take this philosophy. I personally do not think that is an appropriate avenue for us to travel.... So this bill takes the option viewpoint, and that is, [it] just simply says that joint custody is an option to be considered by the court.

ing section 14–10–131.5(4), a rational means whereby a modification from sole custody to joint custody may be judicially ordered when premised upon a finding that such a change is in the best interest of the child.

### III

 In the present case the trial court found that

> it is clear that the [father] has encouraged greater involvement with the children by the [mother] and that the overriding consideration in this case is that, to promote the best interests of the children, each parent should have involvement in the decision-making process regarding the children;
>
> and the Court further [finds] that both of the parties are intelligent persons and, if they apply themselves, they can make joint custody of the minor children work and that this Court is convinced that the [father] will make every effort to insure the success of the joint custody of the children since control should no longer be an issue between these parties;
>
> and the Court [finds] that the best interest of the minor children will be promoted and enhanced by the [mother] having some involvement in important decisions regarding them, although the best interest of the minor children require that the [father] be designated as the primary residential custodian, such that the Court will, in effect, leave the children where they are in a stable environment and thus[ ] provide the [mother] with an opportunity to show the children that they have not been abandoned;
>
> and the Court [finds] that the change of custody as ordered by the Court will be in the best interests of the minor children of the parties and that the harm likely to be caused by the change of environment as ordered by the Court is outweighed by the advantage of such change to the children[.]

We hold that the trial court's findings were made pursuant to the proper standards established by the General Assembly for sole custody to joint custody modifications, i.e., the "best interest" standard articulated under section 14–10–131.5(1) and (4), and we

further conclude that those findings are amply supported by the record. *See Bernick v. Bernick*, 31 Colo.App. 485, 505 P.2d 14 (1972) (holding that on appellate review of custody modifications, every presumption will be made in favor of the validity of the trial court's decision, and only where there has been a clear abuse of discretion will the reviewing court set aside the trial court's award).

Accordingly, we affirm the court of appeals' judgment upholding the trial court's order modifying custody of the Wall children from sole custody with the father to joint custody.