In re the MARRIAGE OF Steven
G. FRANCIS, Appellee,

and

Joanna Krystyna Francis, n/k/a Joanna
Krystyna Chobot, Appellant.

No. 93CA1206.

Colorado Court of Appeals,
Div. I.

June 30, 1994.

As Modified on Denial of Rehearing
Aug. 4, 1994.*

Certiorari Granted March 20, 1995.

Holland & Hart, Frederick G. Meyer, Stephen G. Masciocchi, Denver, for appellee.

Lang, Pauly & Gregerson, Ltd., Susan M. Lach, Minneapolis, MN, for appellant.

Opinion by Chief Judge STERNBERG.

In a post-dissolution of marriage child custody dispute, Joanna K. Francis (mother) appeals orders granting the motions of Steven G. Francis (father) for modification of custody and prohibiting her from removing the minor children from the state. We affirm.

The fifteen-year marriage of the parties was dissolved on May 30, 1992, at which time the decree incorporated a stipulation of the parties. By the terms of the stipulation, the mother received sole custody of the parties' five daughters, ranging in age from four to fourteen, and the father was granted substantial parenting time with them, including overnight visitations with at least one of the younger girls on frequent occasions each week. Shortly after the dissolution of mar-

* Ney, J., would grant rehearing.

riage decree was entered, the oldest daughter began having emotional problems, and in February 1993, she moved in with her father.

In March of 1993, the mother was accepted into a two-year physician's assistant training program at a school in Long Island, New York. When the father learned of this, he moved to modify custody and for an order to prohibit the mother from removing the children from Colorado. The mother filed a motion to modify the visitation schedule in recognition of her impending move.

A custody evaluation was performed by two psychotherapists. Based on their perception of the best interests of the children, they recommended that the parents should "learn to function appropriately ..." and noted that it was "in the best interests of the Francis children to have both of their parents in close geographical proximity." They observed, in this regard, that the children were well integrated into the Fort Collins community, had many friends and family members living there, were involved in numerous activities, and that it would be in their best interests to be able to remain in that community.

However, the evaluators noted that the four youngest girls were more closely attached to their mother than their father and that the mother's desire to embark on a physician's assistant career program was "a good match for her career aspirations and aptitudes ... [and] also represented an important career path for her, which will be important to her professional development and well-being."

The evaluators concluded that, if, after considering their comments, the mother was still committed to the geographical move, the four younger children should be allowed to move with her. They recommended that the oldest girl be permitted to live with her father if she wished.

The trial court conducted a three-day evidentiary hearing on both the removal and custody motions. The court restrained the mother from moving the children from the state, but declined to change custody of the four younger children with one critical exception: If the mother decided to attend school outside of the state, custody of the children was to be changed from her sole custody to joint custody. In that event, the father was to become the residential custodian. Finally, the court changed custody of the oldest daughter from the mother to joint custody. In this appeal, the mother contends that the trial court erred in entering these orders.

## I.

The action of the trial court relative to the motion for change of custody raises the controlling and determinative issue in this case. If we affirm the order that makes a relocation by the mother trigger a change in custody from the mother to being joint in nature and makes the father the residential custodian, then the motion to prevent the mother from removing the children from the state is subsumed within the change of custody order.

In its analysis, the trial court noted the case law in this area was problematic because of the conflict between *In re Marriage of Murphy*, 834 P.2d 1287 (Colo.App.1992) and *In re Marriage of Wall*, 851 P.2d 224 (Colo. App.1992) (*Wall I*). However, in determining what was in the children's best interest the court did analyze the situation under the factors recommended by *Murphy*.

The conflict between *Murphy* and *Wall I* has been resolved and the uncertainty of the standard to be applied has been settled by *In re Marriage of Wall*, 868 P.2d 387 (Colo. 1994) (*Wall II*).

In that case, the supreme court held that, when dealing with modifications from sole custody to joint custody, § 14–10–131.5(1), C.R.S. (1987 Repl.Vol. 6B) applies, rather than § 14–10–131(2), C.R.S. (1987 Repl.Vol. 6B). Thus, in such cases, a modification of custody may be ordered without a showing of endangerment to a child's health or impairment of the child's emotional development, and the applicable standard is the best interests of the child. In *Wall II, supra* (fn. 13), the supreme court also stated: "To the extent that some court of appeals divisions have held that § 14–10–131 applies to a motion for a change in a prior order of sole custody to that of joint custody, those deci-

sions are disapproved, including *In re Marriage of Murphy....*"

When dealing with a motion to change custody, trial courts are imbued with a broad band of discretion. In *Wall II, supra,* at 395, the supreme court stated this rule quite strongly as follows:

> [O]n appellate review of custody modifications, every presumption will be made in favor of the validity of the trial court's decision, and only where there has been a clear abuse of discretion will the reviewing court set aside the trial court's award.

We conclude that there was no abuse of discretion by the trial court in this case. Contrary to the mother's comments interspersed in her brief and made at oral argument, we do not view the trial court's decision as either gender-driven or paternalistic. Nor does the record show that the sole rationale for the decision was protection of the father's visitation rights. Rather, speaking with eloquence and empathy, the trial court analyzed the factual situation and applied the proper legal standard.

In so doing, the court noted, among other things, that in the Fort Collins area, the children's environment was "chock-full" of supportive friends and family members and that the father had spent extensive parenting time with the children. The court contrasted this with the situation that would be encountered in a move to an area of the country where the mother had "no support system in place whatsoever."

The court also referred to evidence in the record concerning the rigorous nature of the physician's assistant program upon which the mother sought to embark. That program required some forty hours of coursework per week, plus approximately twice that many hours of preparation. Also, future evening, weekend, and overnight training was contemplated.

The court concluded that, even though the move and career goal constituted sensible plans by the mother, the move would diminish the quality of life both for the custodial parent and the children. Noting that the younger children had expressed a preference to be with their mother, even if she moved,

the court observed that the girls did not "have enough comprehension of the alternatives they faced to make a meaningful decision in this regard."

In its order, the court stated: "[T]he court finds ... that [the mother's] devotion to her children will, at the very least, cause her to reconsider that decision [to move] very carefully, even at the cost of postponing this particular career plan for the moment." The court reasoned that: "[A] decision by her to go to New York under the present circumstances is ... a decision which subordinates the children's best interests to her own."

The alternative nature of the order, *i.e.,* that the mother would have custody of the four younger girls, but would lose that custody if she chose to move, does not vitiate that order. To the contrary, in our view, it reveals the trial court's clear understanding of the factual issues implicated in changing the children's environment and its application of the best interests standard.

Consequently, we decline to second-guess the exercise of discretion by the trial court with respect to the issues involving the younger children any more than we could do so had the trial court exercised its discretion and ruled in favor of the mother. *See Wall II, supra.*

We do not address the mother's contention that the trial court erred in interpreting the language of a stipulation of the parties which was incorporated in the decree of dissolution. In our view, that stipulation does not require that we engage in any special or different analysis or that we adopt any standard other than the best interests of the children. *See Wall II, supra.*

II.

The mother asserts that the trial court abused its discretion in ordering that custody of the eldest daughter be changed from the mother to being joint in nature. This issue is more easily decided. In this instance, the court was dealing with a sixteen-year old who had expressed her wishes by moving in with her father. The custody evaluators recommended that custody be changed to joint and that the girl live with

the parent she chose. In following this recommendation and recognizing the status quo, the court did not abuse its discretion. *See Wall II, supra.*

### III.

Because this case involves not only a modification of custody from sole to joint, but also a change of custodial parent, a factor not present in *Wall II,* the mother argues that the ruling in that case has no applicability here. She asserts that if a court order has the effect of changing the residential custodian, the "endangerment" standard contained in § 14–10–131(2)(c), C.R.S. (1987 Repl.Vol. 6B), rather than the less stringent "best interests" standard, applies. However, even if the mother's argument in this regard is correct, it would not change the result.

Here, the trial court specifically found: "[T]he change of environment contemplated by the [mother] would significantly impair [the children's] emotional development...." This constitutes a finding that moving the children would "endanger" their emotional development and meets the requirements of § 14–10–131(2)(c), as well as complying with the less stringent "best interests" test.

There being evidentiary support in the record for this finding, it is binding on review. Therefore, since the trial court used the "endangerment" standard the mother argues for, as well as the "best interests" standard, it is not necessary for us to address this contention.

The orders are affirmed.

RULAND, J., concurs.

NEY, J., dissents.

Judge NEY dissenting.

I dissent.

I agree with the majority that the trial court, in attempting to resolve this extremely difficult problem, spoke "with eloquence and empathy ... and applied the best interests of the child standard." However, I believe that, under the circumstances here, the appropriate legal standard is provided by § 14–10–131(2), C.R.S. (1987 Repl.Vol. 6B). I would

therefore reverse and remand the matter for the application of that standard.

The opinion of the majority is founded primarily upon its reading of *In re Marriage of Wall,* 868 P.2d 387 (Colo.1994). There, the court was considering a change from sole to joint custody which did not involve any change of residential custody. That clearly is not the circumstance before us.

Here, in the event of the mother's move from Colorado, the trial court ordered a change from her sole custody to joint custody. However, the primary thrust of the order was to change the residential custodian of the children. In this it is distinguishable from *Wall, supra.* Thus, in my view, it is governed by § 14–10–131(2), C.R.S. (1987 Repl.Vol. 6B), which provides:

The court shall not modify a prior custody decree granting custody to one party unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards, the court shall retain the custodian established by the prior decree unless:

. . . .

(c) The child's present environment endangers his physical health or significantly impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

I believe that a fair reading of *Wall, supra,* emphasizes that in that case no change of residential custodian was being made and that, therefore, the more restrictive requirements of § 14–10–131 for change of custody were not required. In contrast, I conclude that the intent of the General Assembly to promote stability requires that a change of residential custodian must be based upon the standards set forth in § 14–10–131.

The trial court's finding that the change of environment "would significantly impair [the children's] emotional development" is charac-

terized by the majority as one of "endangerment." However, because I conclude that this finding is unsupported by the record, and because the trial court unequivocally based its order on the best interests of the children, thereby rejecting the standards contained in § 14–10–131, this finding does not alternatively support the trial court's order.

I find no authority to support an award of residential custody contingent upon hypothetical effects resulting from possible future actions which the trial court has chosen to discourage by giving the mother the choice of pursuing a concededly sensible career without her children or maintaining custody of the children by abandoning or postponing that career.

Finally, I believe that the majority's approval is tantamount to giving trial courts in changes of residential custody unbridled discretion, which is clearly contrary to the express will of the General Assembly.

Therefore, I would remand for a determination of custody based upon § 14–10–131.